done to my law clerk that was great all right we got three on today's oral argument docket it's a historic day today is Judge Ramirez's very first panel sitting so we have the joy of having her with us all week I and Judge Wilson so no training wheels and she is raring to go so we're gonna kick it off with 2310326 Braidwood Management v. Becerra. Mr. Aguilar take it away. May it please the court, Daniel Aguilar for the United States. The Appointments Clause is designed to promote political accountability so that politically accountable officials take responsibility for government actions. Here the Secretary took responsibility for and appointed the members of the US Preventative Services Task Force CDC and HRSA. There's no dispute about the substance of those agencies recommendations. Now the appointment for this Preventative Services Task Force took place because the district court held that those task force members were officers who had not previously been appointed under the Appointments Clause. We seriously considered that decision and in reaction to it appointed the task force members. We don't dispute their status as officers of the United States. On the merits what we're asking the court to do is to apply the Secretary's statutory authority as it has in other comparable cases to allow the Secretary to constitutionally appoint and supervise these task force members as inferior officers. If the court thinks that there is a constitutional impediment because of that independence provision then what we think the court should do is to declare whatever portion defends the Constitution invalid and separate from the remainder of the Before we get too far along, just to clarify, the government's no longer contesting the district court's holding with respect to the standing of plaintiffs, correct? So we don't contest it with respect to Braidwood as I think everyone agrees Braidwood presents the clearest subject for Article 3 standing and once that's determined the case is properly before the court. With respect to whether or not a nationwide injunction and universal vacature are appropriate, I don't think it matters whether the court thinks about it as a retrustability problem for standing or just the appropriateness of the scope of relief but as to that when you look at plaintiff's declarations in pages 2266 through 69 of the Record on Appeal, all the individual plaintiffs say you know we would like to have these health care coverages without the offending provisions but we can't guarantee that when we purchase it and so to the extent that they're not willing to guarantee and only express a someday intention of maybe we'll consider this in the future. Again, if the court agrees with the district court on the merits, we don't contest plaintiff's specific relief which provides them all of the relief that they're entitled to. The nationwide injuncture and universal vacature at that point are sweeping and drastic remedies and at minimum the district court would have had to consider and weigh the equities on both sides and its failure to do so is a serious issue with respect to the relief that ordered as the scores were making before this court made clear these are preventative services provisions that are critical and life-saving to millions of Americans and to enjoin the federal government nationwide from enforcing those preventative care coverage requirements and vacating them as to the entire country is unwarranted and unjustified. Plaintiffs don't have a particular reason to object to somebody in Wisconsin receiving lung cancer screening without cost-sharing or somebody in Maine getting a colonoscopy. That kind of sweeping and drastic relief is uncalled for. But returning to the merits and I'm happy to discuss the remedies too as are appropriate. On the merits, we think that you can sever that independence provision if appropriate but we also don't think you need to go that far because of course as this court's explained it's an elementary rule that you must have adopt any reasonable construction of the statute that would save it from unconstitutionality. So to the extent you think something more is required outside of that will removal as the district court explained the task force members have no tenure protections that can be removed at will which this court and Supreme Court explained is a powerful tool. If more were needed then the court can construe the independence provision to provide the secretary with review on the back end to decline to give the task force recommendation legally binding effect on third parties and that's the similar mechanism that is present for the CDC recommendations and the HRSA recommendations right those are still subject to secretarial control and that's why the district court properly found that the secretary could ratify them. So is it the government's view that the secretary's appointment of the task force members retroactively cures the recommendations that were already issued? No. So to be clear I think it's helpful to delineate this. We don't contest that the secretary's appointment now cures the appointments caused the effect that the district court identified. Those appointments are constitutional going forward prospectively. As to what remedies that that issue is what the courts of appeals have consistently identified as ratification. The secretary taking political accountability and responsibility. Would the task force need to reissue the recommendations? We don't think so. Properly appointed inferior offices? We don't think so because of the secretary's pre-existing ratification. I think that's a page 1094 of the record on appeal there the secretary said I've reviewed the task force recommendations along with CDC and HRSA and I agree with those in substance I adopt those as my own. The district court held that for HRSA and CDC those ratifications were effective. The district court thought the secretary couldn't do that for the task force because at that point it wasn't being argued that the task force members could serve as inferior officers or were part of the government. Once that's corrected and properly understood that they should and are proceeding as inferior officers then we think that the secretary as the principal officer in the head of department who supervises them. What are their principal officers? So I don't think that they're principal officers and we can go into the here. So initially there's no statutory text that limits a secretary's authority to remove them that well which the Supreme Court's explained is a powerful tool. Well there's the statute that's at issue right that says they're independent and to be free from political influence. How do you square those things? Sure so I think that that what that's saying is that task force like many inferior officers through the government should be making independent decisions free from somebody directing them towards a certain outcome and that's true for many officers throughout the United States and we cite the example of immigration judges or Social Security ALJs who are supposed to make independent determination on the facts before them and then if necessary somebody else can review that at the back end. But where is the secretary's authority to review the task force recommendations? So if the court thinks that's necessary, what I'd point to is the language in A1 and A2 which provide that the recommendations for the task force and CDC become binding when they are quote in effect. And what we've done with respect to the CDC determinations there and say they become in effect when the CDC director adopts them as her own. And so similarly if you think that you need back-end review here as an additional tool of control separate and apart from removal at will, then you would allow the same thing the secretary the determination to choose whether to reject. But where is that in the statute? In other words that what the district court did as I apprehended with the other groups is traced authority of those groups. There was a supervisor. There were several layers of supervisory authority over those groups. You don't have that with the task force. I disagree Your Honor. If you look to section 202, what that does is make clear is that the secretary's responsible responsible for all aspects of the Department of Health and Human Services, particularly those within the Public Health Service. Where is the secretary's authority to reject the recommendations of the task force? So I think that comes from the inherent understanding that the task force members exercise significant authority because of their ability to bind through parties. That's what makes them constitutional officers. So their ability What makes them principal officers? No, Your Honor. So to be clear, the exercise of significant authority, as Edmund explains, is just the prerequisite for whether or not you're an officer. The question then of whether you're inferior or a principal is just about a question of supervision and control. And so all of the cases that have helped people to be inferior officers, none of them has held that anything more than at will removal is sufficient. And to the contrary, if you look to the Supreme Court's decision in Carthrax, there they said these particular patent judges weren't properly operating as inferior officers both because they had an insolation from removal and they could render final adjudicatory decisions. And the Supreme Court specifically identified other adjudicators who were removable at will and said these aren't necessarily constrained within our holding here because they can be removed at will. And I think that that's consistent with the Supreme Court's decision in Morrison, right? The independent counsel there could make many final decisions across territorial matters and had at will removal. Nevertheless, the Supreme Court said she's an inferior officer. And as Justice Felicita sent me clear, that case would have been far more easy if he had been removed at will because then she would necessarily have been inferior to the attorney general. The ability to remove somebody from their office necessarily from that power comes all the authority to supervise and superintend what that person does. We think that that's more than sufficient to render them inferior officers. It's only if the court thinks that more is necessary that we then urge you to adopt a stated instruction. And just to the point of I think your initial question might have been premised on is an idea that independence necessarily means an insulation from from removal. Um, that's not that's not necessary. The benefits or benefits review board, for instance, is removed at will. Nobody doubts that they make independent determinations. Mr. Aguilar, is the secretary required to act on these recommendations? The statute provides a minimum interval length, but not a maximum. That's correct, Your Honor. I think you can read that as a secretary having discretion on when to to provide those recommendations when they would take effect. And so consistent with that, I think is a congressional recognition that they need. The task force needs to be politically accountable to the secretary and that determination of when they'll take effect. And with that, too, I think comes that other part of the independence language. They should not be subject to political pressure, quote, to the extent practical. And there what you have is Congress recognizing there may be a necessity for political supervision. And so that's the that's the avenue that will take here. If it's necessary, then it's permitted. And to the extent you think for whatever reason that you can't construe the statute that way, the appropriate response to that is to take a scalpel to the unconstitutional provisions of the statute rather than a sledgehammer to the entire statutory scheme. But as this court and the Supreme Court have explained, you sever the narrowest portion that's necessary. Then you look to the remainder of the statutory scheme. See, can that still operate? And here it certainly can. You're still going to have the recommendations made on evidence of subject to the task force's knowledge, the secretary's supervision. And then you're going to have all those recommendations be able to go out and help people help the economy by saving enormous costs on unnecessary health care that could have been prevented earlier. We skip briefly. Let's just fast forward to the remedy. Um, we've said in a bunch of cases, I'm sure you're aware that make it's here. Make a tour. Make a chore. Vacator is the default rule. We've described it as the default rule. Um, you assert we ought to kind of balance the equities. And I wonder how do we get from a default rule to a balancing of the equities as the government proposes? I mean, how do we get there? I think with this court's cases exactly explained as it is a default rule, which means it can be deviated from. So if you look to this court's decision and Central and Southwest Services, for example, that ended with in a remand without vacature. As this court explained, the agency might be able to explain its decision and vacator quote would be disruptive to other members of the regulated community. Or you can look toe Alliance for Hippocratic Medicine, which suggests that they could sure without remand would be appropriate when the agency will be able to substantiate its decision. So here were the claim is that the particular officers had not been properly appointed. There's no challenge to the explanations given for these preventative services or an argument that they could forever be barred from exercising that authority. What's necessary is the appointment and supervision. And at that point, when there's no challenge to the underlying substance of it, the agency is going to be able to explain its decision and take the appropriate action is, um, and the government's view is a nationwide injunction necessarily broader than vacature. I mean, if we think vacatures the default a remedy, um, and if again, just all hypothetical, if we think vacatures the default remedy, if we think vacatures a universal remedy, is there anything wrong with having a nationwide injunction? Is it just belt and suspenders is a nationwide injuncture broader than a vacature remedy? I think what this court explained in Louisiana versus Sarah's that nationwide injunction must be justified by its circumstances. And here, but the plans all reside in Texas. They can only buy health plans on the Texas market. There's not any justification for saying that you need to have a nationwide injunction on all the other states. All millions of other people there. The court got it right on vacate or isn't Isn't that the same thing? And I don't think that the court got it right. Just vacate. You wouldn't vacate these things just for people in Texas or just for the plaintiffs. If they're invalid, they're invalid. Well, to be clear, your honor is one. You need to determine whether or not you think that's justified as a matter of equity. Section 702 of the A. P. A. Makes clear that a court retains the authority to deny relief on the basis of equity and a failure to even consider those equities at the outset, I think, is an abuse of discretion. Well, we're right back to Judge Willett's question, though. Vacate or is the general rule. So where do we get into the equities if the thing is invalid? Well, I think what you would look to is this court's decision in Central and Southwest Services Alliance for Hippocratic Medicine and the court's unbunked decision in Cargill versus versus Garland, where this court remanded to the district court to use its discretion in the first instance to determine what remedy would be appropriate. Implicitly noting that I see my touch. Okay, we'll see you back on rebuttal. Thank you. Mr Mitchell. Good afternoon. May it please the court. The Affordable Care Act empowers the U. S. Preventive Services Task Force, the Advisory Committee on Immunization Practices and the Health Resources Services Administration to unilaterally determine the preventive care that all private insurers must cover without any cost sharing arrangements, such as deductibles or copays. The individuals who wield these powers to impose compulsory preventive care coverage mandates on private insurers hold sufficient authority to make them into officers of the United States who must be appointed in conformity with Article two. Yet none of these individuals have been appointed in conformity with the appointments clause. On appeal, the government agrees with us that the members of the Preventive Services Task Force are indeed officers of the United States who should have been appointed in the manner described in Article twos appointments for us. But there are many disagreements that remain. They need to be resolved by this court. The first disagreement we have with the government centers on whether the task court members should be characterized as principal or inferior officers. The government claims that the task force members are inferior officers, and because of that, it claims that it can cure the appointments clause violation by having Secretary Becerra reappoint each of the members to the task force. But the government is mistaken. Task force members are indeed principal officers who must be appointed by the president with the advice and consent of the Senate, regardless of whether any act of Congress purports to best their appointment elsewhere. The test for on whether the individual's work is directed and supervised by someone who was appointed by the president with the advice and consent of the Senate. That's the test that comes from both Edmond and Arthrex. But there's no possibility of direction or supervision here by someone who has been appointed by the president. What about at will removal? President might have at will removal, but the secretary does not, and there's no statute that gives the secretary at will removal, and there's no statute that could be construed to give the secretary at will removal because of Section 299B-4A6, the provision your Honor referenced earlier during Mike Friend's remarks about how the task force must be independent and, to the extent practical, not subject to political pressure. If there were at will removal vested in the secretary, then the task force could not operate independently, consistent with the requirements of that statute. How is that different if the president can remove them at will? The difference would be the president has, as the President pointed out, not only a constitutional prerogative to remove members of the executive branch, but he also has a default statutory prerogative to do so in the absence of explicit language limiting the president's removal powers. So Judge O'Connor found below that the president does have the ability to remove the task force members unilaterally under Article 2, and we're not contesting that conclusion on appeal. But that's different from saying the Secretary of Health and Human Services has that power. Recognizing this prerogative for the president would not be a violation of the statute in American Judge Wilson. It would simply be a recognition of what the Supreme Court has held that Article 2 requires, both with respect to the president's inherent constitutional authority under Article 2's vesting clause, and also with respect to the way statutes have to be interpreted in order to accommodate the constitutionally mandated scope of executive power. The Secretary of Health and Human Services, on the other hand, does not have a constitutional prerogative to remove anyone. He does not wield the executive power of the United States, only the president does. And what crucially matters for purposes of the Appointments Clause is whether the task force members are removable by the secretary, not whether they're removable by the president, because being removable by the president does not make one into an inferior officer. To be an inferior officer, one has to be directed or supervised by someone who is appointed by the president, not being directed or supervised by the president himself. So recognizing a removal prerogative for the president in no way undermines our argument that the task force members are principal officers, because to be an inferior officer, mere presidential supervision is not enough. Every cabinet secretary would satisfy that requirement, and we know cabinet secretaries are principal officers and not inferior ones. The second issue of disagreement that we have with the government centers on whether Secretary Becerra can cure the recommendations of the Preventive Services Task Force, and the secretary did issue a document after the sue on page 1094 of the record where he purports to ratify past recommendations that were made. Now the government claims that because the secretary has issued this document, the Appointments Clause problem goes away, because everyone recognizes that the secretary has been properly appointed as an officer of the United States. But the problem with this under section 300-GG, to ratify or in any way influence the recommendations of the task force, all the secretary can do under the statute is determine a minimum interval of time before which the task force recommendations can take effect. That's his role, it's spelled out at 300-GG subsection, I'm sorry, 300-GG-13 subsection B, and the other provisions of 300-GG-13 in A1 through A4 spell out the role of the Preventive Services Task Force and the other advisory committees in making the recommendations. So the secretary's powers are specifically addressed in the statute, and those powers extend only to extending or establishing a minimum interval of time before which the recommendations can take effect. The other problem with the government's document that Secretary Becerra issued at page 1094 of the record did not go through notice and comment procedures, and it needs to do that because this is a substantive rule that the secretary is purporting to issue. It's not an interpretive rule, it's not a statement of agency policy, it's actually trying to implement law and policy, and that must go through notice and comment unless it's on the statutory exception. Correct me if I'm wrong, the various APA issues that you raised, notice and comment, arbitrary and capricious, as improperly retroactive, all those, tell me if I'm wrong, were those raised below? They weren't raised as freestanding APA claims, that's correct. So we did not, when we first filed our lawsuit, spell out in our complaint a claim that anything that was done by Secretary Becerra violated the APA. That's because he had not issued the Now I think Your Honor's question you're getting to, did we actually make this particular argument before Judge O'Connor in response to the government's invocation of Secretary Becerra's ratification document, and we did not at the time. But that doesn't change the fact that agency action under the APA, in order to be valid under section 553, must use notice and comment procedures if a court is intending to give that substantive effect. And the government doesn't respond to those various APA objections that you raise in their briefing. I believe their response was that we didn't raise them in the district court. I don't recall the government arguing on the merits that this was exempt from notice and comment. And then with respect to arbitrary and capricious, the issue which we mentioned in the brief is that the Secretary has no reasoning in this ratification document. He is simply repeating what the task force did with no independent analysis of his own, without any analysis of the evidence at all. He is just saying in conclusory fashion, I hereby ratify what the task force did. That is not enough to satisfy the arbitrary and capricious standard under the Supreme Court's precedence. So again, there are a lot of problems here with this attempt to cure. The principal problem, and this avoids the APA issues that Judge Willett was asking about, is that the Secretary has no authority to do this in the first place. He cannot, under any statute, decide what this bill of preventive care will be. That is the role of the task force. The Secretary's job is only to establish that minimum of no less than one year under Section 300 GG-13B. So that's the principal problem with the ratification approach. He has no authority in the first place, and the Supreme Court has said an agency official can't ratify the acts of a subordinate unless that official has independent statutory authority to take those actions for himself. Our third issue is whether Secretary Becerra can appoint the task force members himself. And the Secretary has said in his brief to this court that they are intending to reappoint the task force members to avoid any possible appointments clause problems going forward. Many problems with this attempt to remedy the appointments clause situation. The first is that these are principal officers. So if they're principal officers, the Secretary can't appoint them, period. They have to be appointed by the President with the advice of the Senate. And the reason they're principal officers is what we said earlier. They are not subject to the direction or supervision of anyone who has been appointed by the President with the advice of the Senate. The other problem with the Secretary is they need to appoint to a statute, if they are inferior officers, that vests the appointment of these supposed inferior officers in the President alone or in the courts of law or in the heads of department. And we do not have any statute that purports to vest the appointment of the U.S. Preventive Services Task Force in Secretary Becerra. There are many different statutes in which they are trying to rely, but none of them quite do the job. One of them is the provision that gives the director of AHRQ the prerogative to convene the Preventive Services Task Force. And they rely on that statute as well as other statutes to give the Secretary the power to direct the public services division and the head of AHRQ to say, well, the Secretary can the power to appoint. That's not enough to give the Secretary an appointments clause problem. And it's certainly not evidence that Congress has vested an appointments prerogative in the Secretary as opposed to the head of AHRQ. So they need to rely on more than just the statute that gives one of the Secretary's subordinates the power to convene. The other issue that we have is they have no other statute that can plausibly be read to confer an appointment power. They rely on the Reorganization Act of 1966, which gives broad sweeping powers to the Secretary to exercise powers that are vested in other divisions of HHS. But none of this mentions the appointments power, and there's no other statute that vests appointment power in one of the Secretary's subordinates. The other problem with the Reorganization Plan of 1966 is it exempts the powers of advisory councils from being transferred to the Secretary. Then the Secretary of Health, Education, and Welfare today will be the Secretary of Health and Human Services. So there's no statute that vests the appointment of task force members in the Secretary, no matter which statute that we look at. Our fourth issue is this issue of severance. Whether the district court could somehow sever the provision in section 299-B4A6 that says the task force members shall be independent and to the extent practicable, immune from political pressure. The government argued that Judge O'Connor should issue a remedy that, in their words, severs that particular statute that I just read from the U.S. Code. That just can't be done by a federal district court judge. There is no power in a federal court, and certainly not in a federal district court, to enter a judgment that declares a provision of the U.S. Code to be severed and therefore invalid. A district court can issue a declaratory judgment that runs to a particular party that the Constitution or under a statute. A district court can issue an injunction. It can issue an APA remedy that sets aside an agency rule. And it can issue a writ under the All Writs Act. But none of those tools in the district court's remedial arsenal can extend to what the government is asking this court to do, which is to essentially declare a statute stricken from the law books. They use the term severance. I don't think severance is the right word to use. When we use the word severance, they're talking about something different. They're talking about something more akin to a writ of erasure, or a judicial ruling that declares a statute to no longer exist, or that orders government officials to essentially pretend that a statute is no longer law. There's no way a district court can issue that type of remedy that takes the form of a statute. The fifth issue that we are discussing before the court today is the issue of remedy under the APA, whether the words set aside require a vacater. And we acknowledge there's currently disagreement among the members of the Supreme Court over what the phrase set aside means. Three justices have claimed that set aside does not mean vacater, that set aside means something more narrow, that it requires a litigant specific remedy rather than a universal one. This was the opinion Justice Gorsuch wrote in United States v. Texas, joined by two other members of the court. But the law of the circuit currently is otherwise. Data Marketing and Franciscan Alliance, other cases from this court, have said repeatedly that the requirement of district courts to set aside unlawful agency action is a requirement that they formally vacate the allegedly invalid rule, or adjudication, or agency action, and set it aside in the sense that it is being formally erased. And that is inherently a universal remedy. Whatever we may think about the use of universal remedies when it comes to statutes, judicial review under the APA is different. So, is the Nationwide Injunction doing any additional work that vacater doesn't on its own do? Does vacater kind of give your clients the redress you believe they're entitled to? The only difference, I think, between a Nationwide Injunction and universal vacater is one of four. An injunction is backed up with tougher sanctions if you violate it. And a mere judgment from the court that declares a rule vacated may not have the same threat to those who intend to disregard what the court is doing and pretend that the agency rule is still in effect. But I do think Your Honor is right. It really doesn't go much beyond what a vacater would do. Both are universal remedies. And I think the injunction is just a sterner remedy backed up by the threat of contempt. The threat that you might immediately be held in the court and required to explain yourself if you then continue to enforce a rule that has been vacated. Now again, Nationwide Injunction is a term that's been thrown around to describe many different things. And we see district judges throughout the United States issuing Nationwide Injunctions in situations where they should not be issued. We are not in any way today defending the general propriety of Nationwide Injunctions. The rule should always be, when it comes to remedies, the court should, to the extent possible, limit relief to what is necessary to give full redress to the injuries suffered by the named parties. But there are times when courts can go beyond that. One of those is when you have a statute that specifically authorizes broader relief. And that's exactly what we have in Section 706 of the APA. Not only does the APA authorize the remedy of set aside an agency rule, but it requires it. It says that the reviewing court shall hold unlawful and set aside all agency action that is not in accordance with law. But wouldn't that undermine the cause for issuing a Nationwide Injunction or a Universal Injunction? The Universal Injunction would be necessary simply to implement the requirement of vacancy. So when the court formally vacates an agency rule. Where's your case that says that? I mean, the administrative cases we've had, we've vacated rules when it's merited. But we don't review it as it were to accompany in a Nationwide Injunction. That's true. I haven't seen any direction from this court to tell a federal district judge to enter a Nationwide Injunction on remand when the court has held that formal vacancy is required. So I'm not aware of authority from this court saying that a Nationwide Injunction is compelled in those situations. But I don't see how it's doing any harm, Judge Wilson, because the Nationwide Vacaner or the Universal Vacaner that this court requires in data marketing and Franciscan Alliance would be backed up with a Nationwide Injunction, which essentially tells agency officials if you disregard the ruling of this court and continue to enforce this rule that the court has held as vacated across the board, you will have to answer for that in contempt proceedings. I don't see any abuse of discretion for a district judge to issue an injunction in those circumstances that says essentially that. Because as Judge Willard suggested earlier, in substance, the injunction is going no further than what the Remedy of Vacaner has already done. Is that why the court did it here? I suspect that is why it did that. I mean, is there anything in the record to support why the district court did it here? Nothing in the record to support that. We argued in our briefing in the district court that a Nationwide Injunction is an appropriate remedy as long as it is concomitant to a Remedy of Vacaner. And we do not believe Nationwide Injunction should be issued outside of class actions or outside of situations in which a plaintiff needs broader relief to fully address his injuries, unless it's a situation like what we have in 706 of the APA, where you have explicit statutory authority, indeed an explicit statutory requirement to issue a broader remedy, a remedy that sets aside the allegedly unlawful agency rule. But in the end, it doesn't really matter to the extent of what relief will be awarded to the plaintiff. We can still go back and ask for an injunction if the government violates the court's ruling by continuing to enforce a rule that is universally vacated. It would almost be akin to issuing a declaratory judgment without an injunction, which sometimes happens. Courts will sometimes issue a declaratory judgment and decline to issue an injunction because they assume that litigants will comply with the court's ruling, and there's no need to issue an injunction and assume fair faith on the part of litigants. What about the scope of the vacater or the vacation-wide injunction here? Why does it need to encompass more than the recommendations that were actually challenged by the plaintiffs? Because all of the plaintiffs actually were challenging all of the recommendations. Every one of them? Yeah, Dr. Hotzi does not want to be compelled by force of law to include any preventive care coverage in his plan without any deductibles or co-pays, unless he chooses on his own initiative to do that. And he wants to have control over what he will charge with respect to co-pays, whether he will allow preventive care to count toward his deductible. He wants full autonomy. Now, when it comes to the Religious Freedom Restoration Act claim, that was limited because he did not have religious objections necessarily to many of the preventive care coverage mandates that were being agreed. And those were specifically enumerated in our declarations that we included in the district court record. But when it came to the appointments clause, the plaintiffs want all of these declared invalid because none of the officials who issued them were properly appointed. So, the extent the PrEP drugs were singled out, that was for the RFRA claim? Correct. That is correct. And that has not been appealed. So, Dr. Hotzi, Braywood Management Incorporated prevailed on the RFRA claim with respect to the PrEP drugs, but the government did not appeal that plaintiff-specific ruling of what the district court did. So, up on appeal, it's just about the appointments clause, and our arguments there extend to all the preventive care coverage mandates, not simply the ones where the plaintiffs have religious objections. Mr. Mitchell, thank you very much. Thank you, Your Honors. Mr. Aguilar, welcome back. You have five minutes on rebuttal. So, as I take the plaintiff's argument here, what they're asking the court to do is to construe the statutory authority to deny appointment authority to the Secretary, to deny the Secretary the ability to remove officers at will, to deny the Secretary any constitutionally necessary need to supervise, and to extend the district court's relief beyond the named plaintiffs to parties who are not before the court. That request violates several fundamental principles, both of Article II and this court's precedents. To the beginning on the removal rule, removal is the background rule, and to the extent that they're saying you need to construe the independence of some reason to remove it, that's contrary to this court's decision in the SELA enterprise, where it made very clear you need explicit statutory commands about limiting removal controls, and just implying it from the statute is not something that we do. I'd also point to the note that on their statutory appointment authority, they're saying that you can't read the statutes in a way to get the Secretary authority to appoint these people as inferior officers. It's contrary to this court's decision in New England, which relied on the materially identical reorganization plan from the Department of Labor to hold that grant of the Secretary of Labor appointment authority over inferior officers, and it's inconsistent with what the Supreme Court directed in Edmund, which is even if you think you can read a statute as giving specific appointment authority to somebody who's not a department head and would therefore be unconstitutional. That's not what we do, because we construe the statutory scheme in any reasonable light to preserve the ability of the Secretary there, the Secretary of Transportation, to appoint inferior officers, even if, as in Edmund, it was in response to a litigation challenge. I'd also point that you cite the part of the reorganization plan that says it doesn't apply to advisory councils. The language there that is talking about advisory councils is talking about the Advisory Council Act, and there it's an advisory council that can only make recommendations. It doesn't have any force of law, and you can point to specific advisory councils that HHS had at the time. For example, there was something under the Mental Health Community Act of 1963, or the Surgeon General's Advisory Committee on Smoking at the time. Those are purely advisory councils, but if you look at subsection E6, talking about the independence provision, if you look directly above that, what it makes clear in E5 is that the task force is not governed by the Federal Advisory Committee Act. It's not an advisory council, and that's because they can go out into the world and make their actions have force of effect on other parties, that makes them officers, and therefore all of the concerns about constitutional reading statutes allow the executive control to come into play. Your Honor asked about the EPA claims. They abandoned those complaints. They were not in the second complaint, and that's because a record on Appeal 197 to 203 would explain why those notice of comments claims fail on the merits. When it came into a summary judgment briefing, that's when the Secretary's ratification happened, and look at their response and reply brief on summary judgment. They attacked that ratification on numerous grounds, but not on any grounds related to the EPA, and if they were to bring an EPA claim, they would have had to identify specific agency action. That's the Supreme Court's first case in Lujan. You can't just challenge a program generally. You have to challenge discrete agency actions, and here they've not. They've just said anything that the government did to enforce a preventative services care coverage should be validated. And just finally, on relief, we agree that if this court thinks that the district court's decision on the merits stands, then plaintiff-specific relief would be appropriate, along with a chance for properly appointed officers to make these recommendations in the normal processes of becoming law. But even with that, you would not invalidate preventative care coverages for other people around the country who are not parties before the court. As this court's explained, VIGADR is a default rule, which means that other circumstances can come over to explain that it should not be the rule in a particular case. Quick question back on the merits. Mr. Mitchell added an appendix to his principle brief that sort of catalogs all the different statutes that use the word convene in a way that differs from the way the government reads that word here. And so, if we were to agree with you that convene does sort of include or encompass the power to appoint in this context, would that do any kind of reason to pause about what it might be doing to other statutes? No, Your Honor, because most of the time what that just means is collect the body together. But as Justice Thomas has explained, right, the appointment's not an indispensable incantation. Many numerous verbs can go along to that same appointment authority. What I direct the court to as well is, in this court's decisions in Willie and Kennedy, the court didn't say that needed a word about appoint a convener, that those have special meanings. What was important was that the statutory scheme gave the department head control and authority, and that's what's present here. Who appointed them in the first place? The task force members? So, in the first place, they were convened by that subdirector. Who appointed them? Right. So, they were not appointed at the time this complaint was brought. Then afterwards, while they're opening the brief, explaining the various statutory authorities or the secretary's ability to appoint— Who appointed them initially? So, they were not constitutionally appointed, and we're not making that argument. If you're saying who selected them— Yes. —the director of the agency research and healthcare quality, which is a subdepartment within HHS. And so, if you're wondering why that could allow for a constitutional appointment, I'd point you to the United States versus Parkville, where it was explained an assistant treasurer could appoint an inferior officer so long as it was still done with the affirmation of the secretary. And that's the same logic that this court applied in Kennedy, told that that particular person was appointed as an officer for purposes of whether or not the district would have jurisdiction. Anything else? Okay. Thank you very much. Thank you. We appreciate the arguments from both sides. And the case is submitted.